Morning. Daniel Cohen, Oklahoma from Washington D.C. for the Appellant's. This case falls illegally and historically has been attempted by the California Air Resource Board to require every truck in every other state of the nation to install an in order to cross the California border. The basic issue here is not whether they can do it, but which court you have to go to to challenge them to do that, right? That's the decision that the district court made. The truck needs to be reinstated. The district court, you may know, took the first word on this. Please amend. We can go to the district court and let me explain. That's the issue before us, is whether you may go to the district court or whether you must challenge them to include those regulations in the court of appeals. That's the question before the court. But the background is profoundly important. Because of the constitutional dimension of this attempt by CARB to require every truck in the country to buy one of these filters just to come to California, it was incumbent upon the EPA to explain this, to discuss the policy implications of this, in a moment or somehow, in the SIPP approval proceedings, did nothing. Under 42 U.S.C. SEPA, did you raise that by challenging what the EPA did in the court of appeals? Well, we could not. You can't attack something you can't see. And we see in DCIA throughout the proceeding that the administrator did not approve this. There's no indication that he even knew this was the regime that CARB was going to attempt to enforce against all the truckers throughout the country. And there are statutory reasons that support this. I would say that you ordinarily would challenge what you can see, what the administrator has done. The reasons he puts forth in this decision, that's the action of the administrator that you would challenge in the court of appeals. Here, the only legal policy interpretation that the EPA administrator offered was the question of preemption. Whether the state was preempted by the CARB from promulgating this regulation. He said nothing about its extension to interstate truckers. He said nothing about an analysis of the commerce laws implications of such an astonishing account by one state agency to tell every trucker in the country. He said nothing about these things. He has reason to say he won't pursue that. I agree to that. And also, if you had brought your case here, there might be hearings. But if you brought it in the district court, there would still be all the issues we're talking about. If you brought it in the district court, and it came up in the surrounding farms, that would be overruled. I'm telling you that if you go back, and there's some sort of a time period problems that may be, that I don't have any idea what to do with, I'm thinking it's out there in the world to be told. You're supposed to file it in the case of the court of appeals. That's an oral process for the administrative members. And I would say to you, what level of inspection is this? Well, I might have, I would have if I could see that the administrator had made such a determination in the ruling. But going back to 43 U.S.C. 707-D3C, the administrator is required to announce a proposed rulemaking, which shall include a summary of the major legal interpretations and policy considerations underlying the proposed rule. He said nothing about an extension of this regulation to every trucker in the country. He said nothing about the Commerce Clause implications. We can't petition an erroneous finding that he didn't make. He just didn't make it. Now, the other point we make is that, unlike other rulings of the administrator, he made another one, or the administrator made one that very day, in which the administrator expressly found that the ruling had additional applicability or the same provision of 7607 allows for a finding that the ruling has an unified scope and effect. And in those instances, then he would be in the D.C. circuit. What's important here is that he didn't make the finding. Mr. Cohen, it might be helpful if you could tell us why you think this case is about to go over to the California Dump Truck Deployment Association. Well, certainly the California Dump Truck case involved a very different question, a very different set of plaintiffs. It was a California-based group of truckers who wanted to pursue a preemption challenge against CARBs, of course, by the regulation. Very clearly, you can see that the EPA administrator was talking about California truckers, and he was talking about preemption. He announced the policy. Those truckers had every ability to petition to this court. We had also a challenge to the separate statement of the case plan. That was the effect of this court's ruling. But here we are not challenging a SIP approval. Were the SIP approved as well? Because this regulation is a part of the SIP, right? The regulation is a part of the SIP, but the SIP proceeding did not authorize an extension of the regulation to every trucker in the country. And by the way, we would assume that the regulation itself is ambiguous to the extent that you're interpreting it so it does apply to every trucker in the country. That's the difference between U.S. and California. As I read the briefs and I'm understanding your argument, the remedy you're seeking in the district court is precisely the remedy you could have sought in the Court of Appeals by making the arguments you're making now. Is that right? I think I disagree. We filed a 1983 action in federal district court. We're seeking an intention, we're seeking damages, we're seeking declaratory judgment that the regime being implemented by car violates the commerce clause of the United States Constitution. None of these were addressed in the SIP proceeding. What we could have done, I suppose, if a law that is addressed in the SIP proceeding was to attempt to reverse the decision of the administrator, but there's no decision to reverse because he didn't announce it. It's not a part of the policy. If there ever was case for detrimental reliance, he told us, unlike the other decision made that day, this does not apply to truckers elsewhere. It doesn't have any nationwide scope in effect. And another point I'd like to make is that, and I tendered this statute to House for CARB. We intend to file a 28-J letter, but the administrator also stated at the end of the ruling that it's not a major rule under 5 U.S. Code 804. And a major rule is defined as something that is, a major rule is one that has an annual effect in the economy of $100 million or more. A major increase in cost prices for consumers, individuals, industries, etc. and sees significant adverse effects on competition. He is broadcasting that this rule is none of that. When, in fact, the regime they are attempting to promulgate is all of that. It is not only, it not only violates the fight policy, it does resubmit its patently protectionist. They're erecting a wall around California saying, truckers you can't come in unless you buy an $18,000 filter. And this case pales in comparison to the Benverson Avenue case, which involved a $30 mop flap. These are the kinds of things that should have been stated in the administrator's decision. If that's what's going to happen. One of the comments made in the brief is, while there weren't any comments by OIDA, an association with 150,000 members, or anyone else regarding the Commerce Clause, little wonder, nothing was said about it. How can you attack something that you can't see what's got done? In fact, you were given contrary indications by the administrator. The other point we make in our brief is that, under the MEMA and EPA cases and the ATA case, those cases expressly hold when there's a Commerce Clause violation alleged by the state, the courts tell us to go sue them in the Federal District Court of the state. That's what we did here, and when we went there they said, no, you should be in the Court of Appeals. And when we go to the Court of Appeals and allege a Commerce Clause violation, they tell us, no, you're in the wrong court, you need to go back to the district court. The court needs to set this straight. Particularly in this case, we've never, ever seen anything, any Commerce Clause violation to the extent that we've seen here. And we asked the court to reverse the judgment. We're going to reserve the remaining time. Good morning, Your Honors. May it please the Court, Linda Gondera for the California Air Resources Board of Defendants. This case is materially indistinguishable from the Tom Stroke case. Now, the association argues that it's different because the USEPA's SIP approval somehow does not apply to trucks operating in California if those trucks are registered in another state. But in its notice of proposed rulemaking, the USEPA, in the very summary, stated that the SIP, the State Implementation Plan, you are approving a regulation that applied to trucks operating within California. And the regulation itself clearly states that it applies to trucks that are operating in California. And, indeed, this is not in the record, but it's traditionally noticeable that AWAIDA did participate in the state rulemaking procedures. Raising the form of Commerce Clause issues there, they were aware of these issues. Now, the association also argues that somehow dump truck is distinguishable because the USEPA did address Clean Air Act preemption issues when the dump truck case involved the F4A preemption issue. But as footnote 11 of the dump truck decision states, it's not clear at all whether the USEPA had addressed F4A preemption. But it didn't matter because that failure was because nobody raised it in comments. And, indeed, it appears that many of the association's complaints are findings that USEPA didn't make in the approval proceeding. And that just highlights the fact that this is a challenge to the USEPA final action and needs to be brought as a challenge to the SIP in the Court of Appeals in the first instance. Additionally, the association argues that the failure of the USEPA to make a finding of nationwide scope and effect is somehow significant here. But that finding does not relate to jurisdiction, it simply relates to venue. And the lack of a finding means that the case is venued in the Ninth Circuit rather than the D.C. Circuit. And, indeed, the Dalton Trucking case, which the association heavily relies on, explains that a finding of nationwide scope and effect is not necessary when a rule applies to vehicles operating in California. Even if some of those vehicles are located outside the state, indeed Dalton Trucking indicates that a finding of nationwide scope and Finally, the association relies on cases where ARB argued in the courts found that following a waiver preemption decision by the USEPA, a regulation could still be challenged at the district court level. But those are all waiver decisions. And there are two distinctions between USEPA waiver and this preemption waiver proceedings and approval of the regulation into a state implementation plan, which is what we have here, was a set approval, unlike a waiver. The state regulation that is approved is federalized, is incorporated into the code of federal regulation, and has nationwide scope and effect. Thus, even if this regulation is challenged and somewhat prevails, it's still federally enforceable, and the truckers will still have to comply with it. Second, in a SIP proceeding, as we have here, unlike a waiver proceeding, the USEPA administrator has to make a determination that there is no obstacle under state or federal law to the enforcement. That finding is not made in waiver proceedings. Therefore, unlike a waiver proceeding, their challenge to the SIP is challenging the USEPA's determination that there is no obstacle under state or federal law. Thank you. Thank you. I'd like to address the last point, meaning that the EPA administrator stated that there is no obstacle under state or federal law to the implementation of regulation. That was the first sentence of a phrase in discussion regarding preemption and that was the focus of the EPA discussion. It did not in any way, shape, or form discuss commerce clause implications. A policy being announced by the EPA, an analysis of the commerce clause implications, and standing alone as the EPA administrator, he said, I find no obstacle as a matter of state or federal law against the implementation. Nothing more than everyone would just be guessing what was the policy, what was the rationale. You would have agencies not being careful about announcing what their objectives or you would have lawyers. I don't see an argument there. I don't know whether that's Peter. You might be able to understand it. I'm not here. I respectfully disagree. What I'm saying is this is what the EPA did not do. Just by stating that I find no obstacles as a matter of state or federal law gives me a reason to believe. Well, let's see what he says about that. He's talking about preemption. He's not talking about the commerce clause. He's not approving a regime which violates the commerce clause. He can suspend the writ of papers, or he can take their property away. I mean, they can do these things. I'm sorry. They can do these things and say, oh, well, the EPA administrator said he's got no obstacles as a matter of state or federal law. He needs to be doing that. Well, he's not to say that. I'd like to join you in your point, to make an argument with respect to the jurisdiction of the district license in the Court of Appeals. Well, if we're not attacking the decision of the administrator, and the administrator made no decision regarding an extension of his will to interstate truckers, and he could have stated it had national credibility and nationwide scope and effect, and he didn't make this finding that it's a major rule, we're not attacking his rule? If we're not attacking his rule, then there's no restriction under 7607 or under the dump truck case against us suing the car defendants for violating our civil rights under the commerce clause. He just did not make the rule that there's no there there. There's nothing to attack. There's no prohibition against us going to district court and trying to vindicate our constitutional rights under the commerce clause. Maybe preemption, maybe preemption, but not the commerce clause. Thank you. Thank you. DC is adjourned. We will exit now. The court will take a five-minute recess before the final case in the morning. Thank you.
judges: Reinhardt, Tashima, Molloy